UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FREDRICK BERNARD LEWIS, *in his capacity as the father of* CORNIELUS DESHUN LEWIS, *aka Cornelius Lewis, deceased,* AND JANICE MARIE CLOSE, *in her capacity as the mother of* CORNIELUS DESHUN LEWIS, *aka Cornelius Lewis, deceased, and as the Personal Representative of the Estate of* CORNIELUS DESHUN LEWIS, *aka Cornelius Lewis, deceased*, | § § § § § § § § § § | |
| V. | § § § | CIVIL ACTION NO. _____ |
| THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, UNIVERSITY OF TEXAS MEDICAL BRANCH, YOLANDA E. SMITH, TAMEKA D. HENRY, ALLISON LECHLER, STEPHANIE L. TERRY, MARY A. LANINGHAM, MICHAEL W. UTLEY, JOSHUA MCDONALD, LEONDRA S. LAND, MEGAN L. HARVISON, CHERYL A. LANG, TERRI B. SANFORD, CINDY M. LOPEZ, GOLDIE R. JONES, RENA N. SIMMONS, CHUKS G. MAZI, JANE W. MUCHOKI, NICOLE M. BERTRAM, LINDSEY A. JENKINS, FRANCIS H., SCHUITEMAKER, VIRGINIA LOVELL, MELISSA A. HARRIS, AMY D. JONES, AMBER N. HATHWAY, KELLY A. NAZIFPOUR, and CRYSTAL D. KENNEY | § § § § § § § § § § § § § § § § § § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

## **TABLE OF CONTENTS**

Table of Contents ................................................................................................................2

Nature of the Case ..............................................................................................................3

Parties .................................................................................................................................4

Jurisdiction .......................................................................................................................11

Venue ...............................................................................................................................12

Factual Background ..........................................................................................................12

     A.     Intake...................................................................................................12

     B.     Cornelius is routinely denied his medication at the Ferguson Unit .....................13

     C.     Medical personnel at the Ferguson Unit ignore obvious warning signs that their failure to provide Cornelius with his medication is going to cause him to harm himself or others ...............................................16

     D.     The Ferguson Unit has a policy or custom, which deprives inmates of their prescribed medications ...............................................18

Causes of Action ..............................................................................................................18

     A.     Claims under 42 U.S.C. § 1983 and Eighth and Fourteenth Amendments to the U.S. Constitution as to all Defendants ...............................................18

     B.     Claims against TDCJ and UTMB ...............................................19

     C.     Claims against the Nurses ...............................................21

     D.     Qualified Immunity Under § 1983 ...............................................22

Damages...........................................................................................................................23

Injunctive Relief Requested .............................................................................................24

Attorney's Fees and Costs ...............................................................................................25

Relief Requested ..............................................................................................................25

Jury Demand ....................................................................................................................25

Prayer ...............................................................................................................................25

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, FREDRICK BERNARD LEWIS, in his capacity as the father of CORNEILUS DESHUN LEWIS, aka Cornelius Lewis, deceased, and JANICE MARIE CLOSE, in her capacity as mother of CORNEILUS DESHUN LEWIS, aka Cornelius Lewis, deceased, and as the personal representative of The Estate of CORNEILUS DESHUN LEWIS, aka Cornelius Lewis, deceased, ("Plaintiffs"), complaining of the TEXAS DEPARTMENT OF CRIMINAL JUSTICE ("TDCJ"); the UNIVERSITY OF TEXAS MEDICAL BRANCH ("UTMB"); YOLDANA E. SMITH, TAMMEKA D. HENRY, CMA, ALLISON LECHLER, CMA, STEPHANIE L. TERRY, CMA, MARY A. LANINGHAM, MICHAEL W. UTLEY, LCN, JOSHUA MCDONALD, LVN, LEONDRA S. LAND, LVN, MEGAN L. HARVISON, LVN, CHERYL A. LANG, LVN, TERRI B. SANFORD, LVN, CINDY M. LOPEZ, LVN, GOLDIE R. JONES, CMA, RENA N. SIMMONS, CCA, CUCKS G. MAZI, LVN, JANE MUCHOKI, CMA, NICOLE M. BERTRAM, LVN, LINDSEY A. JENKINS, LVN, FRANCIS H. SCHULTEMAKER, LVN, VIRGINIA LOVEL, RN, MELISSA A. HARRIS, LVN, AMY D. JONES, LVN, AMBER N. HATHAWAY, CMA, KELLY NAZIFPOUR, LVN, and CRYSTAL D. KENNEY, LVN (all Defendants, except for TDCJ and UTMB, will be referred to as "the Nurses") and for cause of action would respectfully show unto this Honorable Court as follows:

## I.      NATURE OF THE CASE

1.      This is a civil action arising under the United States Constitution, particularly under the provisions of the Due Process Clause and the Eighth and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving CORNEILUS

DESHUN LEWIS, aka Cornelius Lewis, and Plaintiffs of rights secured under the Constitution and laws of the United States.[1]

## II.   PARTIES

2.      Decedent, CORNEILUS DESHUN LEWIS, aka Cornelius Lewis, ("Cornelius"), was at the time of the incident made the basis of this action, an individual in the custody of the Texas Department of Criminal Justice at the Jim Ferguson Unit (the "Ferguson Unit") in Madison County, Texas.[2]

3.      Plaintiff, FREDRICK BERNARD LEWIS ("Fredrick"), father of Cornelius, is a citizen of the United States currently residing in Angelina County, Texas.

4.      Plaintiff, JANICE MARIE CLOSE ("Janice"), mother of Cornelius, is a citizen of the United States currently residing in Angelina County, Texas, and is the personal representative of the Estate of CORNEILUS DESHUN LEWIS, aka Cornelius Lewis.

5.      Defendant, TEXAS DEPARTMENT OF CRIMINAL JUSTICE ("TDCJ") is a governmental entity located within the State of Texas.  TDCJ can be served with process by sending a copy of the summons and complaint to Texas Secretary of State by certified mail at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079.  See TEX. CIV. PRAC. & REM. CODE § 101.102 (c).  Alternatively, TDCJ may be served with process by sending a copy of the summons and complaint by certified mail to the Honorable Dale Wainwright, Chair of the Texas Board of Criminal Justice, at P.O. Box 13084, Austin, Texas 78711.  *See id.*

6.      Defendant, UNIVERSITY OF TEXAS MEDICAL BRANCH ("UTMB"), is a

---

[1] Although Plaintiffs refer to Defendants collectively at times, specific factual references are made concerning actions or inactions by specific Defendants throughout this Complaint – these are not global allegations.  As such, this pleading complies with current federal standards.  FED. R. CIV. P. 8&9.

[2] Cornelius was assigned Offender No. 1978929 by TDCJ.

governmental entity located within the State of Texas.  UTMB can be served with process by sending a copy of the summons and complaint to Texas Secretary of State by certified mail at Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079.  See TEX. CIV. PRAC. & REM. CODE § 101.102 (c).  Alternatively, UTMB may be served with process by sending a copy of the summons and complaint by certified mail to Dr. David L. Callender, President of UTMB, at Suite 6,100 Administration Building, 301 University Blvd., Galveston, Texas 77555-0129.  *See id.*

8.     Defendant, YOLANDA E SMITH, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

9.     Defendant, TAMEKKA D. HENRY, CMA, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, CMA Henry assumed her role as a Certified Medical Assistant.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

10.     Defendant, ALLISON LECHLER, CMA, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, CMA Lechler assumed her role as a Certified Medical Assistant.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive,

Midway, Texas 75852.

11.     Defendant, STEPHANIE L. TERRY, CMA, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, CMA Terry assumed her role as a Certified Medical Assistant.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

12.     Defendant, MARY A. LANINGHAM, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, CMA Laningham assumed her role as a Certified Medical Assistant.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

13.     Defendant, MICHAEL W. UTLEY, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of his employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Utley assumed his role as a Licensed Vocational Nurse.  He can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

14.     Defendant, JOSHUA MCDONALD, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of his employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN McDonald assumed his role as a Licensed Vocational Nurse.  He can be served with process by

delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

15.     Defendant, LEONDRA S. LAND, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Land assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

16.     Defendant, MEGAN L. HARVISON, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Harivson assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

17.     Defendant, CHERYL A. LANG, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Lang assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

18.     Defendant, TERRI V. SANFORD, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN

Sanford assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

19.     Defendant, CINDY M. LOPEZ, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Lopez assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

20.     Defendant, GOLDIE R. JONES, CMA, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, CMA Jones assumed her role as a Certified Medical Assistant.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

21.     Defendant, RENA N. SIMMONS, CCA, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, CCA Simmons assumed her role as a Certified Coding Associate.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

22.     Defendant, CHUKS G. MAZI, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of his employment and under color of statutes, ordinances, rules and

regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Mazi assumed his role as a Licensed Vocational Nurse.  He can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

23.     Defendant, JANE W. MUCHOKI, CMA, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, CMA Muchoki assumed her role as a Certified Medical Assistant.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

24.     Defendant, NICOLE M. BERTRAM, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Bertram assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

25.     Defendant, LINDSEY A. JENKINS, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Jenkins assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

26.     Defendant, FRANCIS H. SCHUITEMAKER, LVN, was employed by TDCJ and/or

UTMB and was acting within the scope of his employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB. At the time of the incident, LVN Schuitemaker assumed his role as a Licensed Vocational Nurse. He can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

27.     Defendant, VIRGINIA LOVELL, RN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB. At the time of the incident, RN Lovell assumed her role as a Registered Nurse. She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

28.     Defendant, MELISSA A. HARRIS, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB. At the time of the incident, LVN Harris assumed her role as a Licensed Vocational Nurse. She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

29.     Defendant, AMY D. JONES, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB. At the time of the incident, LVN Jones assumed her role as a Licensed Vocational Nurse. She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

30.     Defendant, AMBER N. HATHAWAY, CMA, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, CMA Hathaway assumed her role as a Certified Medical Assistant.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

31.     Defendant, KELLY A. NAZIFPOUR, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Nazifpour assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

32.     Defendant, CRYSTAL D. KENNEY, LVN, was employed by TDCJ and/or UTMB and was acting within the scope of her employment and under color of statutes, ordinances, rules and regulations, customs, and usage of TDCJ and/or UTMB.  At the time of the incident, LVN Kenney assumed her role as a Licensed Vocational Nurse.  She can be served with process by delivering a copy of the summons and complaint to the Jim Ferguson Unit, 12120 Savage Drive, Midway, Texas 75852.

33      All of the Nurses are sued in their individual capacities.

### III.     JURISDICTION

34.     This action is brought pursuant to 42 U.S.C. §§ 1983 and the Due Process Clause and the Eighth and Fourteenth Amendments to the United States Constitution.  The Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343.

## IV.    VENUE

35.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the acts, events or omissions giving rise to this claim occurred in Madison County, Texas, which falls within the United District Court for the Southern District of Texas, Houston Division.

## V.    FACTUAL BACKGROUND

### A.    Intake

36.    On December 29, 2014, Cornelius was sentenced to three years' imprisonment in TDCJ for two counts of robbery and unlawfully carrying a weapon by the 159th District Court in Angelina County, Texas.

37.    Cornelius was just 19 years-old at the time he was sentenced.  Despite his young age, Cornelius exhibited signs and symptoms associated with mental illness and was prescribed medication to treat mental illness.

38.    On February 26, 2015, Cornelius was processed at the Reverend C. A. Holiday Transfer Facility (the "Holiday Unit") in Huntsville, Texas.  The Holiday Unit is a TDCJ intake and transfer facility for incoming offenders.  After being processed and screened at the Holiday Unit, offenders are typically assigned to another TDCJ facility for service of their sentence.

39.    As part of his processing, Cornelius was given a medical screening and evaluation by TDCJ medical personnel.  Cornelius indicated that he suffered from mental illness and was taking medication for mental illness.  This information is clearly noted on Cornelius's "Correctional Managed Care Intake History and Health Screening" form.  Accordingly, TDCJ and TDCJ medical personnel were put on notice that Cornelius:  (1) suffered from mental illness and (2) required medication.

40.    On February 23, 2015, medical personnel at the Holiday Unit proscribed Cornelius with

numerous medications, including medications to treat mental health.

41.     After processing at the Holiday Unit, medical records indicate that Cornelius was transferred to the Jerry H. Hodge Unit (the "Hodge Unit") in Rusk, Texas, for a mental health evaluation.   The Hodge Unit is medical and mental health facility operated by TDCJ. Specifically, TDCJ classifies the Hodge Unit as a "Developmental Disabilities Program Unit."

42.     A physician at the Hodge Unit ordered testing for Cornelius on March 10, 2015.

43.     At some point between March 2015, and June 2015, the exact date is uncertain at this juncture, Cornelius was sent to the Ferguson Unit.  The Ferguson Unit is located outside of Midway, Texas.

44.     According to the TDCJ website, the Ferguson Unit houses 2,100 inmates and has 11 contract medical employees and 3 mental health employees.[3]   Medical and mental health employees are provided to the Ferguson Unit, and TDCJ generally, through UTMB.

**B.     Cornelius is routinely denied his medication at the Ferguson Unit**

45.     Despite noting on his initial intake forms that he was taking medication for mental illness, it appears from medical records provided by TDCJ that Cornelius was not given any medication until June 12, 2015.

46.     On June 11, 2015, Frances E. McGinnis ("McGinnis"), a Clinical Nurse Specialist in Psychiatry/Mental Health, proscribed Cornelius Sertraline (50mg) and Risperidone (1mg) to be taken daily.

47.     Sertraline is an antidepressant used to treat various forms of mental illness, including depression, obsessive-compulsive disorder, panic disorder, anxiety disorder, post-traumatic stress disorder, and premenstrual dysphoric disorder.

---

[3] Texas Department of Criminal Justice, *Unit Directory:    Ferguson (FE)* (Sep. 15, 2016), https://www.tdcj.state.tx.us/unit_directory/fe.html (last visited Oct. 5, 2017).

48.     Risperidone is an antipsychotic medication used to treat schizophrenia and bipolar disorder (manic depression).

49.     Despite McGinnis's order that Cornelius was to be given Sertraline and Risperidone daily, medical records show that he was not given his medication for extended intervals.

   a.     From June 15, 2015, through June 29, 2015, Cornelius was not given Sertraline or Risperidone.  Over the period from June 11, 2015, to July 10, 2015, the compliance percentage for Cornelius being given his mediation was 36.67%. Records indicate that Cornelius refused his medications on July 8, July 9, and July 10.

   b.     Cornelius was not given Sertraline or Risperidone from July 23, 2015, until August 10, 2015.  Over the period from July 11, 2015, to August 10, 2015, the compliance percentage for Cornelius being given his medication was 40%.

   c.     Cornelius was not given his Sertraline or Risperidone from August 11, 2015, until August 28, 2015.  Over the period from August 11, 2015, until September 3, 2015, when Sertraline and Risperidone were stopped, Cornelius was only given his medication on August 28, September 1, September 2, and September 3.

50.     Medical records obtained from TDCJ fail to state a reason that Sertraline and Risperidone were stopped.

51.     On September 3, 2015, Cornelius was prescribed Citalopram (20 mg) by John Q. Wang ("Wang"), a Certified Physician's Assistant, which was to be taken daily.

52.     Citalopram is an anti-depressant used to treat depression.

53.     Despite Wang's order that Cornelius was to be given Citalopram daily, medical records show that he was not given his medication for extended intervals.

   a.     Cornelius was not given Citalopram on September 30, 2015, and October 1, 2015, and October 3, 2015.  Over the 30 day period from September 3, 2015, to October 3, 2015, the compliance percentage for Cornelius being given his medication was 90%.

   b.     Cornelius was not given Citalopram on October 5, 2015, October 7, 2015, October 8, 2015, and October 24, 2015.  Over the period from October 3, 2015, to November 2, 2015, the compliance percentage for Cornelius being given his medication was 80%.

c.  Cornelius was not given Citalopram on November 15, 2015, November 27, 2015, and November 30, 2015.  Records indicate that Cornelius refused his medications on November 29, 2015, and December 1, 2015.  Over the period from November 2, 2015, to December 2, 2015, the compliance percentage for Cornelius being given his medication was 80%.

d.  Cornelius was not given Citalopram from December 2, 2015, until December 15, 2015, on December 19, 2015, on December 23, 2015, and December 29, 2015.  Over the period from December 2, 2015, to January 1, 2016, the compliance percentage for Cornelius being given his medication was 40%.

e.  Cornelius was not given Citalopram on January 18, 2016, January 24, 2016, January 25, 2016, January 29, 2016, and January 30, 2016.  Over the period from January 1, 2016, to January 31, 2016, the compliance percentage for Cornelius being given his medication was 83.33%.

f.  Cornelius was not given Citalopram on February 3, 2016, February 12, 2016, February 13, 2016, February 19, 2016, and February 26, 2016.  Over the period from January 31, 2016, to March 1, 2016, the compliance percentage for Cornelius being given his medication was 80%.

g.  Cornelius was not given Citalopram on March 1, 2016, March 5, 2016, and March 11, 2016.  The medicine was unavailable on March 11, 2016.  Citalopram was stopped on March 14, 2016.

54.  Medical records obtained from TDCJ fail to state a reason that Citalopram was stopped.

55.  For reasons that are unknown at this time, Cornelius was given no medication to treat his mental illness form March 14, 2016, until June 17, 2016.

56.  On June 16, 2017, Wang prescribed Divalproex Sodium (500mg) to Cornelius to be taken daily.  Among other things, Divalproex Sodium is used to treat manic bipolar disorder (manic-depressive illness).

57.  Despite Wang's order that Cornelius was to be given Divalproex Sodium daily, medical records show that he was not given his medication for extended intervals.

a.  Cornelius was not given Divalproex Sodium on June 17, 2016, June 25, 2016, July 1, 2016, July 9-10, 2016, and July 12-16, 2016.  Over the period from June 16, 2016, to July 16, 2016, the compliance percentage for Cornelius being given his medication was 66.67%.

      b.     Cornelius was not given Divalproex Sodium from July 11, 2016, to July 21, 2016, on July 25, 2016, and July 29-31, 2016.  Between July 11, 2016, and July 31, 2016, Cornelius was only given his medicine five times.

58.     From July 29 to July 31, 2016, Cornelius was denied the medication necessary to treat his mental illness.

59.     On July 31, 2016, around 12:00 p.m., a TDCJ guard found Cornelius hanging in his cell from a bed sheet.

60.     Medical personnel were called to Cornelius's cell, but efforts to revive Cornelius were unsuccessful.

61.     Cornelius was pronounced dead at 2:26 p.m. on July 31, 2016.  He was 21 years-old.

**C.**     **Medical personnel at the Ferguson Unit ignore obvious warning signs that their failure to provide Cornelius with his medication is going to cause him to harm himself or others**

62.     Initially, when Cornelius arrived at the Holiday Unit, he advised TDCJ staff and medical personnel that he suffered from mental illness and was proscribed medications to treat his illness.

63.     On August 27, 2015, Cornelius cut his finger with his razor.  Medical records show that Cornelius was not given his medication between July 23, 2015, and August 27, 2015.  Medication was then given on August 28, 2015.

64.     On August 31, 2015, Cornelius was involved in an altercation with another offender and suffered minor injuries.  Once again, medical records show that Cornelius was not given his medication between July 23, 2015, and August 27, 2015.

65.     Medical records from October 25, 2015, indicate that Cornelius had mental health issues, which were observed on 10/6/2015 at 3:55 p.m.

66.     On December 12, 2015, Cornelius filed a complaint that he was not being given his medication.  Medical records show that from December 2, 2015, through December 14, 2015,

Cornelius was not given his medication.

67.     Cornelius was then was given his medication on December 15, 16, 17, and 18, 2015. Cornelius was not given his medication December 19, 2015.

68.     On December 19, 2015, at 21:42 (9:42 p.m.), Cornelius was seen by medical personnel for a laceration on his left forearm.  It is suspected that the laceration was self-inflicted.

69.     On March 12, 2016, after not being given his medication on March 11, 2016, Cornelius was involved in a use of force incident.

70.     On April 29, 2016, Cornelius was seen by medical personnel for self-mutilation.  At that time Cornelius had not been given any medication since March 14, 2016, when his medication was abruptly stopped for unknown reasons.

71.     On June 8, 2015, after not being given any medication since March 14, 2016, Cornelius was involved in another use of force incident.

72.     On June 11, 2016, after not being given any medication since March 14, 2016, Cornelius was allegedly involved in an altercation with his cell-mate.  Records indicate that Cornelius had lacerations of the letter "X" on his torso and cuts on both arms.  Following this event, medication was restarted on June 16, 2016.

73.     Medical records clearly show that medical personnel were fully aware that Cornelius had mental health issues shortly before his death.  Specifically, the report following Cornelius's death indicates that "Other Unspecified, Impulse-control, And Conduct Disorder First Observed 6/16/2016 09:43AM."  Despite this information, Cornelius was not given his medication on June 17, 2016, June 25, 2016, July 1, 2016, July 9-10, 2016, July 12-21, 2016, July 25, 2016, and July 29-31, 2016.

74.     Cornelius was seen by medical personnel on July 29, 2016, two days before he was found

hanging in his cell.  Cornelius complained that he was cold and wanted an extra pair of socks.

Medical personnel advised him that they could not provide extra outwear.  Despite seeing

Cornelius and have the opportunity to administer his medication, records indicate medical

personnel failed to provide him with his medication on July 29, 2016.

**D.**    **The Ferguson Unit has a policy or custom, which deprives inmates of their prescribed medications**

75.    Despite the fact that the Ferguson Unit houses 2,100 offenders, it has 11 contract medical

employees and 3 mental health employees.[4]

76.    That number of medical personnel is woefully inadequate to provide proper medical care

to 2,100 offenders.

77.    The nurses are employed or contracted by TDCJ and/or UTMB to provide medical care

to the offenders.

78.    Between July 31, 2015, and July 31, 2016, the date Cornelius died, there were 81

offender grievances received at the Ferguson Unit regarding offenders not being given their

prescribed medications.  *See* Exhibit A.  The custom and practice of the Ferguson Unit is to

routinely deny inmates their needed medications.

## VI.  CAUSES OF ACTION

79.    Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 78,

inclusive, with regard to all causes of action.

**A.**    **Claims under 42 U.S.C. §1983 and Eighth and Fourteenth Amendments to the U.S. Constitution as to all Defendants**

80.    Defendants, acting under color of law and acting pursuant to the customs and policies of

TDCJ deprived Cornelius of rights and privileges secured to him by the Eighth Amendment to

---

[4] Texas Department of Criminal Justice, *Unit Directory:    Ferguson (FE)* (Sep. 15, 2016), https://www.tdcj.state.tx.us/unit_directory/fe.html (last visited Oct. 5, 2017).

the United States Constitution and by other laws of the United States, by failing to provide proper medical treatment, by failing to protect him and through indifference to his medical needs, in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the cited constitutional provisions.

81.     The Eighth Amendment's prohibition of "cruel and unusual punishments" imposes a duty on prison officials to "provide humane conditions of confinement."  TDCJ officials, along with medical personnel contracted with TDCJ to operate and manage the Ferguson Unit, are imposed the duty to ensure that inmates received adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates.

82.     Cornelius had a right secured by the Eighth Amendment and the Due Process Clause to be free from deliberate indifference to his serious medical needs without due process of the law, while he was incarcerated by TDCJ at the Ferguson Unit.

**B.     Claims against TDCJ, and UTMB**

83.     Plaintiffs assert that Defendants TDCJ and UTMB were deliberately indifferent to Cornelius' serious medical needs and that these violations of Cornelius' constitutional rights were the result of TDCJ's and/or UTMB's policies, practices, customs, or procedures.

84.     Defendants, TDCJ and/or UTMB, implemented policies, customs and practices with deliberate, callous and conscious indifference to the constitutional rights of Cornelius, failed to ensure the implementation of practice of any policies, procedures, and practices necessary to provide constitutionally adequate medical services to Cornelius during his incarceration in at the Ferguson Unit; and further implemented de facto policies, procedures, and practices which actually interfered with or prevented Cornelius from receiving medical services and necessary medication.

85.     Facts supporting each of the elements of a § 1983 claim listed above are found in the

"**Statement of Facts**" applicable to all claims, but may be summarized as follows:

    a.      A policy, custom, or practice of failing to provide offenders with their prescribed
            medications;

    b.      A policy, custom, or practice of failing to monitor the confinement of inmates to
            ensure that they were receiving appropriate medical services and medication;

    c.      Denial or delay of medical treatment and prescribed medications for the purpose
            of saving money;

    d.      Failure to provide proper amount of medical staff to provide proper medical care
            for offenders housed at the Ferguson Unit;

    e.      Failure to properly train, hire, control, and supervise employees, including the
            failure to discipline or terminate medical personnel who failed to provide
            offenders with their prescribed medications; and

    f.      Allowing LVNs to make medical diagnosis and decisions regarding medical
            treatment without physician consultation or assessment.[5]

86.     These actions by the TDCJ and UTMB subjected Cornelius to confinement with

constitutionally inadequately staffed medical services, and medication, such as:

    a.      Confinement conditions that do not provide necessary and prescribed
            medication;

    b.      Confinement conditions that fail to ensure that offenders of receiving their
            prescribed medications; and

    c.      Providing medical care through LVNs without supervision of a proper medical
            professional.

87.     Based on the 81 offender grievances, including one by Cornelius himself, in the year

preceding Cornelius' death, TDCJ and/or UTMB had actual or constructive knowledge of these

unconstitutional policies, practices, customs, and procedures, at the Ferguson Unit.

88.     As a result of TDCJ's and UTMB's unconstitutional policies, practices, customs, and

---

[5] LVN's are limited in their scope of practice and unless an assessment reveals a common health problem with well-defined outcomes, they must report the assessed or reported change in condition to a supervising RN and/or Physician. (*Texas Board of Nursing: The Interpretive Guideline for LVN Scope of Practice*, Jan. 24, 2006).

procedures, Cornelius took his life because he was not being provided with the prescribed medication necessary to treat and control his mental illness.

## C.   Claims against the Nurses

89.    As set forth in the Statement of Facts, ¶¶ 36 to 79, *infra,* the Nurses, intentionally, and with deliberate indifference, deprived Cornelius of his clearly established federal constitutional rights, including, but not limited to:

  a.    His right to receive proper medical services and medications for any serious medical conditions; and

  b.    His right to be free from cruel and unusual punishment.

90.    Each of the Nurses, had a duty to ensure that Cornelius received adequate medical care, including being given his prescribed medications, yet failed to do so.  The Nurses' actions were more than negligent as Cornelius' continued medical issues (including his documented and diagnosed mental illness), his previous medical history, and his prior history of harming himself or other when not properly medicated.  Yet, despite this knowledge, the Nurses consciously chose not to ensure that Cornelius received adequate medical care and was given his prescribed medication.  The Nurses, through these actions, proximately caused the deprivation of Cornelius' rights to due process of law and rights to be free from cruel or unusual punishment subjecting him to periods of inhumane incarceration under unduly painful, horrifying, and dangerous conditions resulting in the death of Cornelius.  The actions of the Nurses were singularly, or in combination, a legal cause of death to Cornelius.

91.    Cornelius was in serious need of medical treatment and required medication to treat his mental illness and prevent him from harming himself or others, as was well known to the Nurses. Nonetheless, the Nurses willfully and maliciously failed to provide Cornelius with prescribed medications and insure that he received proper medical care/

92.     At all times material hereto, the Nurses were employed by or under contract with TDCJ or UTMB, and acting within the course and scope of their employment and in furtherance of the duties of their offices or employment.

93.     The Nurses clearly breached their constitutional duty to tend to basic human needs of persons within their charge, acting with deliberate indifference and subjective recklessness to the clear needs of Cornelius, of which they had subjective knowledge.  The Nurses had full knowledge of Cornelius' prior medical history; however, they made a conscious decision, pursuant to the policies, practices, or customs of TDCJ or UTMB and/or their inadequate training to not insure that he was given his proscribed medications daily and failing to provide him the necessary medical care as required under the United States Constitution.  Given Cornelius' prior medical history and prior history while at the Ferguson Unit, the Nurses deliberately disregarded the serious risk of medical harm.

**D.     Qualified Immunity under § 1983**

94.     TDCJ or UTMB employees, who were carrying out a discretionary function can be entitled to qualified immunity to their individual liability, but this immunity is waived if the complainant shows that:

> a.     the individual's acts deprived the party of constitutional rights under color of law
>
> b.     the deprived rights were clearly established and constitutional rights which existed at the time of the acts; and
>
> c.     such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

95.     The Nurses, persons acting under color of state law, enforcing TDCJ or UTMB policies, customs, and procedures for incarceration of persons, or by their failure to properly train in the handling of such persons, deprived Cornelius of his civil liberties without due process of law by

failing to provide adequate medical assistance during his incarceration, which included days of distress and ultimately resulted in his death at the facility. No reasonable TDCJ and/or UTMB employee could have believed that depriving or failing to provide an individual with his prescribed medications was lawful. The acts of the Nurses, when viewed objectively, were unreasonable under the circumstances. Therefore, qualified immunity is waived in this case.

96.    The Nurses involved in this case, acting under color of state law, were deliberately indifferent to the excessive risk to Cornelius' health and safety in their acts, or failures to act. Such acts violated and deprived Cornelius' clearly established constitutional rights and were not objectively reasonable.

97.    The acts of the Nurses clearly violated established statutory or constitutional rights of which a reasonable person would have known, including the constitutional rights afforded by the Due Process Clause, and Eighth and Fourteenth Amendments of the United States Constitution.

98.    The acts of Defendants were so obviously and grossly wrong, that only a plainly incompetent organization or its employee, or one who was knowingly violating the law, would have performed such an act, and therefore, Defendants are liable to Plaintiffs for the damages caused by their actions.

99.    The aforementioned acts resulted in the delay and ultimately the failure to provide any of the necessary medical treatment to Cornelius, which in turn proximately caused his death.

## VII. <u>DAMAGES</u>[6]

100.    Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 99, inclusive, with regard to all causes of action.

101.    As a result of Defendants' constitutional violations, Plaintiffs have suffered serious and

---

[6] Plaintiffs are not asserting a claim for monetary damages against TDCJ or UTMB or Warden Moore in his individual capacity.

substantial damages and injuries, for which they request the award of the following categories of

damages,

Wrongful Death:

a. Mental anguish, including emotional pain, torment and suffering that Plaintiffs have separately experienced due to the death of their son;

b. The pecuniary loss of care, maintenance, support, services, advise, counsel and reasonable contributions of pecuniary value that Plaintiffs have sustained and lost in reasonable probability due to the death of their son;

c. The loss of society and companionship representing the positive benefits flowing from the love, comfort, companionship and society that Plaintiffs have sustained in reasonable probability due to the death of their son;

Survivorship Claims:

d. Physical Pain and suffering endured by CORNELIUS LEWIS throughout his confinement and leading up to his impending death recoverable by the estate;

e. Mental anguish, including emotional pain, torment, and suffering that CORNELIUS LEWIS endured during his confinement leading up to his death recoverable by the estate;

f. Burial expenses incurred by CORNELIUS LEWIS' estate resulting from his death; and

g. These damages should be separately assessed by the jury with regard to each individual Plaintiff.  A fair and impartial jury should listen to the evidence and award an amount for each element of damages that is just, and fair based on the evidence.

102.   Pursuant to 42 U.S.C. § 1983, Plaintiffs are also entitled to recover and hereby request

the award of exemplary damages as to the Nurses, reasonable attorney's fees and costs of Court.

## VIII.  INJUNCTIVE RELIEF REQUESTED

103.   Plaintiffs request that this Court enter a permanent injunction requiring TDCJ and UTMB

to adopt or modify their medical procedures to ensure that offenders are given their prescribed

medications as directed and that the Ferguson Unit retains sufficient trained medical personnel to

carry out this task.  A permanent injunction is necessary to ensure that no other offender is forced

to suffer like Cornelius Lewis and his parents.  Without an injunction, offenders housed at the Ferguson unit will continue to be routinely deprived of their prescribed medications.

## IX.  ATTORNEY'S FEES AND COSTS

104.    Plaintiffs are entitled to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings.

## X.  RELIEF REQUESTED

105.    The preceding factual statements and allegations are incorporated by reference.

106.    For these reasons, Plaintiffs pray for judgment against Defendants, any or all of them, for the following:

    a.    Actual damages;

    b.    Pre-judgment and post-judgment interest;

    c.    Attorney's fees and expenses;

    d.    Punitive and exemplary damages in an amount to be determined;

    e.    Costs of Court;

    f.    Permanent injunctive relief; and

    g.    Such other and further relief as the Court deems just and equitable.

## XI.  JURY DEMAND

107.    Plaintiffs respectfully demand trial by jury and has tendered the appropriate fee for the same.

## XII.  PRAYER

WHEREFORE, Plaintiffs respectfully request Defendants to be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Defendants jointly and severally.

Plaintiffs further respectfully requests that they be afforded all due expediency within the discretion of this Honorable Court to facilitate the preservation of evidence, to demonstrate that such unconscionable conduct will not be tolerated in a civilized society, and to ensure that justice may be served.

Respectfully submitted,

**THE BERNSEN LAW FIRM**

**David E. Bernsen**
Texas Bar No. 02217500
Southern District No. 83425
dbernsen@bernsenlaw.com
**Christine L. Stetson**
Texas Bar No. 00785047
Southern District No. 17641
cstetson@bernsenlaw.com
**Tanner G.M. Franklin**
Texas Bar No. 24082506
Southern District No. 3137898
tfranklin@bernsenlaw.com
420 N. MLK, Jr. Pkwy
Beaumont, Texas 77701
409/212-9994 – Telephone
409/212-9411 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**