IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FREDRICK BERNARD LEWIS, *et al.*, § § Plaintiffs, § § v. § § THE TEXAS DEPARTMENT OF § CRIMINAL JUSTICE, *et al.*, § § Defendants. § | CIVIL ACTION NO. H-18-311 |

**ORDER**

In March 2019, the plaintiffs, Fredrick Bernard Lewis and Janice Marie Close, filed the third amended complaint and moved for leave to assert claims against two new defendants, the University of Texas Medical Branch, commonly called UTMB, and a licensed mental-health counselor, Sheri Nichols-Woodward. (Docket Entry Nos. 97, 98). Owen Murray, Virginia Lovell, and Michael Utley opposed the motion and argued that the court should deny leave because the applicable limitations periods bars the claims. (Docket Entry Nos. 104, 105).

After a careful review of the proposed amended complaint, the motion and response, the record, the applicable law, and the arguments presented at the hearing, the plaintiffs' motion for leave to add new parties is granted. The reasons are explained in detail below.

**I.    Background**

The relevant facts are laid out in this court's December 2018 Memorandum Opinion and Order. In July 2016, Lewis killed himself while in custody at the Jim Ferguson Unit of the Texas Department of Criminal Justice. (Docket Entry No. 75 at 16). In February 2018, his parents, Fredrick Bernard Lewis and Janice Marie Close, sued the Texas Department of Criminal Justice,

UTMB, and 27 medical personnel, asserting Eighth and Fourteenth Amendment claims based on the denial of medical treatment. (Docket Entry No. 12). In May 2018, the plaintiffs voluntarily dismissed their claims against UTMB, without prejudice. (Docket Entry No. 15).

In December 2018, the court granted the defendants' motions to dismiss the claims against medical staff Cheryl A. Lang, Joshua McDonald, Terri B. Daigle, Michael W. Utley, Chuks Mazi, Megan L. Harvison, Virginia Lovell, Tamekka D. Henry, Allison Lechler, Jane M. Muchoki, Stephanie Terry, Goldie R. Jones, and Rena N. Simmons, and the claims against other nurses and physician assistants, with leave to conduct limited discovery and to amend their complaint before March 20, 2019. (Docket Entry Nos. 84, 95). The court denied Murray's and Linthicum's motions to dismiss the plaintiffs' Eighth Amendment claims. (*Id.*).

In March 2019, the plaintiffs filed a third amended complaint and moved for leave to assert claims against UTMB and Sheri Nichols-Woodward under the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, and the Rehabilitation Act. (Docket Entry Nos. 97, 98). The defendants argued that the statute of limitations barred the claims. (Docket Entry Nos. 104, 105). The plaintiffs agree that the limitations period has expired, but they argue that the circumstances provide the court with a basis to equitably toll the limitations period. (Docket Entry No. 104 at 8).

**II.     Analysis**

The plaintiffs must show good cause to amend the complaint to assert claims against new parties. The indicated in the initial pretrial conference that no new parties were needed. *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016). The court may consider: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a

continuance to cure such prejudice." *Id.* at 328 (quoting *S&W Enters., LLC v. S. Tr. Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)); *see also Plains Cotton Coop. Ass'n v. Gray*, 672 F. App'x 372, 377 (5th Cir. 2016).

Even if the plaintiffs have shown good cause, the court must deny leave to amend if the proposed claims against the new parties could not succeed based on the well-pleaded complaint allegations, viewed in the light most favorable to the plaintiff. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016); *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010); *Rio Grande Royalty Co. v. Energy Transfer Partners*, 620 F.3d 465, 468 (5th Cir. 2010). Time-barred claims cannot succeed. *Washington v. City of Gulfport*, 351 F. App'x 916, 918 (5th Cir. 2009); *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Because the limitations period ran from when Lewis died in July 2016, the newly asserted claims are barred unless the court finds a basis to equitably toll the limitations period, as the plaintiffs concede. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001); *Frame v. City of Arlington*, 616 F.3d 476, 488–89 (5th Cir. 2011); *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 982–83 (5th Cir. 1992); *see also Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016). The plaintiffs have "the burden to provide justification for equitable tolling." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011).

A court may toll a limitations period if its application would be "inequitable" under the circumstances. *Balle v. Nueces Cty.*, 690 F. App'x 847, 851 (5th Cir. 2017) (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). Both Texas and federal courts "sparingly" apply equitable tolling. *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012). "Traditional equitable

principles preclude a court from invoking equitable tolling . . . when the party seeking relief has an adequate legal or statutory remedy to avoid the consequences of the statute of limitations." *Id.* at 299.

The plaintiffs contend that they have good cause for their delay and a basis for equitable tolling because they filed an Open Records Request for Lewis's mental-health records in 2016. They did not receive all the records that they sought, including records showing Lewis's 45 meetings with Nichols-Woodward, until after the limitations period expired. The defendants argue that the plaintiffs were not diligent in seeking the records in 2016 because their Open Records Request did not include psychotherapy notes or specify which documents they sought.

**A.     Good Cause**

In October 2016, the plaintiffs filed their Open Records Request with the Texas Department of Criminal Justice, asking for Lewis's medical records during his custody. (Docket Entry No. 104-2 at 2). In February 2017, the UTMB produced 103 pages of medical records. These records did not include information about Lewis's visits with mental-health staff, including Nichols-Woodward. (*Id.*).

The plaintiffs filed their original complaint in February 2018, more than six months before the limitations expired. (Docket Entry No. 1). The plaintiffs contend that they served the Texas Department of Criminal Justice and UTMB in April 2018, but that serving the nurses, physicians, and other medical staff took longer because the plaintiffs did not know their addresses. (Docket Entry No. 98 at 3). The plaintiffs contend that they voluntarily dismissed their claims against UTMB before they had discovered that Lewis visited Nichols-Woodward 45 times and filed 20 sick calls before his death.

In December 2018, the parties exchanged initial disclosures, and the defendants produced 428 pages of medical and mental-health records, many of which had not been disclosed in response to the Open Records Request. (Docket Entry No. 98 at 3). The plaintiff state that the newly produced records showed that Lewis "had extensive interaction with [UTMB]'s mental health personnel"; Cornelius visited Nichols-Woodward 45 times and filed 20 sick calls requesting to see a doctor or psychiatrist; "Nichols-Woodward repeatedly refused to refer him to a psychiatrist, an inpatient psychiatric facility[,] or to alert security staff to take suicide precautions"; Lewis "had been a candidate for [the Texas Department of Criminal Justice]'s Development Disabilities Program"; and he "had threatened to cut himself and hang himself" three months before he died. (*Id.* at 4).

Because the defendants did not turn over many material mental-health records in response to the Open Records Request, and the plaintiffs did not have another way to obtain the records before filing this litigation, the plaintiffs have demonstrated good cause for their delay in seeking to add claims against UTMB and Nichols-Woodward. FED. R. CIV. R. 16(b); *S&W Enters.*, 315 F.3d at 536; *see, e.g.*, *Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*, No. H-10-1708, 2011 WL 2193294, at *5 (S.D. Tex. June 6, 2011); *Yates-Williams v. El Nihum*, No. H-09-2554, 2010 WL 3505159, at *4–*5 (S.D. Tex. Sept. 3, 2010).

B.  **Equitable Tolling**

The Texas equitable tolling principles apply to the claims that the plaintiffs have asserted against UTMB and Nichols-Woodward. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015). A court may apply equitable tolling when "a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." *Bilinsco*

*Inc. v. Harris Cty. Appraisal Dist.*, 321 S.W.3d 648, 654 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (quoting *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005, no pet.)). "The equitable tolling doctrine permits a plaintiff to avoid the bar of the statute of limitations if, despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim." *Austin Indep. Sch. Dist. v. Lofters*, No. 03-14-71-CV, 2015 WL 1546083, at *5 (Tex. App.—Austin Apr. 1, 2015, pet. denied).

Equitable tolling is applied "sparingly." *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012). "A party seeking to invoke equitable tolling must establish an 'excusable reason' for not having brought suit in the limitations period which is of a nature sufficient to show that the abandonment was not in fact voluntary." *Drake v. Consumers Cty. Mut. Ins.*, No. 05-13-170-CV, 2015 WL 2182682, at *8 (Tex. App.—Dallas May 8, 2015, pet. denied) (quotation omitted). "A party may not rely on equitable tolling to overcome his own negligence." *Id.*

The defendants contend that the plaintiffs' Open Records Request sought medical and mental-health records, but not psychotherapy records, making the Texas Department of Criminal Justice's response complete. The defendants are correct that the release form accompanying the Request did not authorize the disclosure of psychotherapy notes. (Docket Entry No. 98-1 at 5). Psychotherapy notes are defined as "notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's medical record." 45 C.F.R. § 164.501. The definition "excludes medication prescription and monitoring, counseling session start and stop times, and modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items:

6

Diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date." *Id.* Because the psychotherapy-note definition covers only the content and analysis of conversations between therapist and patient, the Texas Department of Criminal Justice and UTMB had to produce Lewis's mental-health records that fell outside those categories, including his diagnoses, functional status, treatment plan, symptoms, prognosis and progress. The defendants' argument that the release did not authorize them to disclose Lewis's mental-health records is unpersuasive.[1] *See Fint v. Brayman Constr. Corp.*, No. 17-CV-4043, 2019 WL 150273 (S.D. W. Va. Jan. 8, 2019) ("Psychotherapy notes are defined narrowly under HIPAA, including only those notes made by a mental health care provider that document or analyze the contents of conversations occurring during counseling sessions, and that are separated from the rest of the individual's record.").

The court finds that the plaintiffs were reasonably diligent in investigating Lewis's mental-health treatment in the days leading to his suicide. Within three months of Lewis's death, the plaintiffs filed the Open Records Request, asking for:

- [the i]nmate medical file of . . . Lewis during his incarceration at the Jim Ferguson Unit, including but not limited to inmate medial requests, notes, observations, records, progress notes, visits to infirmary, medication distribution, test results, medical charts, notations of doctor visits or appointments and complaints regarding [him];

- All documents provided by Texas Department of Criminal Justice–Jim Ferguson Unit or its agents to the Texas Commission on Jail Standards concerning their investigation of the death of [Lewis];

- All documents containing any investigation conducted by Texas Department of Criminal Justice–Jim Ferguson Unit concerning the in-custody death of [Lewis], including but not limited to all statements taken of jail personnel and/or inmates or other witnesses.

---

[1] The plaintiffs and defendants disagree on whether a statutory or contractual definition of "medical records" should have applied to the plaintiffs' Open Records Request. (Docket Entry No. 98-3 at 6; Docket Entry No. 104 at 8–9). It is unclear what affect the definition would have on the plaintiffs' due diligence in investigating Lewis's mental-health treatment in the days leading to his suicide.

(Docket Entry No. 98-1 at 1–2). The plaintiffs submitted a release form, authorizing the Texas Department of Criminal Justice and the UTMB to disclose "all health and billing" items and "Mental Health Records." (*Id.* at 5). The defendants did not produce some of Lewis's mental-health records in response to the Open Records Request, though they fell within its ambit. Those records showed that Lewis met with Nichols-Woodward 45 times and made 20 sick calls in the days and months before his death. The plaintiffs had no way to access these documents other than the Open Records Request. The plaintiffs did not learn of the other records until they were disclosed in litigation, after the limitations period had run.

The plaintiffs have also alleged enough facts to support a plausible inference that UTMB and Nichols-Woodward knew of Cornelius's mental illness, his death, and this litigation before the limitations expired. It would not be a surprise to UTMB or Nichols-Woodward, who met with Lewis 45 times during his custody, that litigation could arise after a prisoner with mental-health issues committed suicide in prison. UTMB was previously a defendant in this lawsuit. Because this case remains at an early stage, UTMB and Nichols-Woodward will have time for discovery and dispositive motions. Their defenses will not be unduly prejudiced by being joined to the litigation at its current stage.

Because the plaintiffs exercised reasonable diligence in seeking the records related to Lewis's mental-health treatment, but did not receive those records until the limitations period had expired, applying the limitations period to bar the plaintiffs' claims against UTMB and Nichols-Woodward would be inequitable. *See, e.g.*, *Green*, 260 F. App'x at 719–20; *Cowart v. Erwin*, No. 3:10-cv-1800-G-(BN), 2013 WL 3970790, at * 6 (N.D. Tex. Aug. 2, 2013); *Rogers v. Buchanan*,

No. 3:12-cv-2458-M-BN, 2015 WL 5772203, at *8–*9 (N.D. Tex. Aug. 4, 2015).[2]

## IV. Conclusion

The plaintiffs' motion for leave to add UTMB and Nichols-Woodward as defendants, (Docket Entry No. 98), is granted.

SIGNED on May 13, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

---

[2] The court need not address the plaintiffs' fraudulent-concealment arguments because they have been granted relief based on equitable tolling.